**W. Dale WELCH, et al., Plaintiffs,**

v.

**The BOARD OF SUPERVISORS OF RAPPAHANNOCK COUNTY, VIRGINIA, Defendant.**

**Civ. A. No. 94–002–C.**

United States District Court,
W.D. Virginia,
Charlottesville Division.

May 24, 1995.

Michael S. Dingman, Hazel & Thomas, Falls Church, VA, Suzanne Mackall Perka, Hazel & Thomas, Alexandria, VA, J. Randall Minchew, John Holland Foote, Hazel & Thomas, Manassas, VA, for plaintiffs.

George Harrison Gilliam, Neal L. Walters, Gilliam, Scott & Kroner, P.C., Charlottesville, VA, Mark A. Trank, Paxon, Smith, Gilliam & Scott, P.C., Charlottesville, VA, for defendant.

## MEMORANDUM OPINION

MICHAEL, District Judge.

This is an appeal of a final judgment entered by Magistrate Judge B. Waugh Crigler after the parties consented to his jurisdiction over dispositive motions pursuant to 28 U.S.C. § 636(c). The plaintiffs are farmers who would like to apply sewage sludge to their land located in Rappahannock County (the County). The County, however, passed an amendment to its zoning ordinance (the Ordinance) which prohibits the land application of sewage sludge within the County.

The magistrate judge granted summary judgment for the County on all five of the Complaint's counts, but the plaintiffs have appealed only Count I, the Commerce Clause claim, and Count II, the preemption claim. The issues before the court, therefore, are whether the Clean Water Act (the Act), 33 U.S.C. §§ 1251–1376 (1986), preempts a local ordinance banning the land application of sewage sludge, and whether such an ordinance violates the Commerce Clause, U.S. Const. art. I, § 8, cl. 3. For the reasons that follow, the decision of the magistrate judge is affirmed.

## I.

The County amended its zoning ordinance in September of 1993 to prohibit the land application of sewage sludge anywhere in the County.[1] Sewage sludge, also known as biosolids, is the necessary by-product of the treatment of human wastewater. Precisely, it is "solid, semi-solid, or liquid residue generated during the treatment of domestic sewage in a treatment works. Sewage sludge includes, but is not limited to, domestic septage; scum or solids removed in primary, secondary, or advanced wastewater treatment processes; and a material derived from sewage sludge." 40 C.F.R. § 503.9(w) (1994). There are only three ways to dispose of sewage sludge: (1) incineration; (2) disposal in a landfill; and 3) land application. See 58 Fed.Reg. 9256 (1993). Land application can be defined as "the spraying or spreading of sewage sludge onto the land surface; the injection of sewage sludge below the land surface; or the incorporation of sewage sludge into the soil so that the sewage sludge can either condition the soil or fertilize crops or vegetation grown in the soil." 40 C.F.R. § 503.11(h) (1994). When applied to land, sewage sludge "improve[s] the condition and nutrient content of soil for agricultural crops, including row and feed crops and pastures." 58 Fed.Reg. 9256.

Notwithstanding these apparent benefits, however, sewage sludge is a pollutant and is regulated by the Environmental Protection Agency (EPA).[2]

The plaintiffs contend that the regulations promulgated pursuant to the Act establish a national policy favoring land application of sewage sludge, and the Ordinance is preempted because it conflicts with this national policy. The County asserts, however, that the Act and its regulations allow localities to select the method of use or disposal of sewage sludge, despite any preference for land application. Magistrate Judge Crigler found that the Ordinance is not preempted by the Act.

The plaintiffs also contend that the Ordinance is invalid because its burden upon interstate commerce is excessive when balanced against its putative local benefits. On appeal, they assert that genuine issues of material fact remain with regard to this balancing test, and summary judgment was inappropriate. The County responds that the plaintiffs have not demonstrated any burden on interstate commerce, and the putative local benefits are sufficient to withstand a Commerce Clause challenge as a matter of law. Magistrate Judge Crigler agreed with the County and found that the Ordinance does not violate the Commerce Clause.

## II.

This court must review the magistrate judge's grant of summary judgment de novo. *Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir.1991). Summary judgment is proper if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). A failure of proof concerning an essential element of the plaintiffs' claims necessarily renders all other issues of fact immaterial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The County's motion for summary judgment

---

**1.** The County amended the Ordinance again in October of 1994, but this amendment does not substantively affect either claim at issue in this appeal.

**2.** Some of the chemicals which may pose environmental dangers found to be present in sewage sludge include arsenic, cadmium, chromium, copper, lead, mercury, molybdenum, nickel, selenium, and zinc. *See* 40 C.F.R. § 503.13(b) (1994) (setting ceilings for amount of these chemicals present in sewage sludge).

places upon the plaintiffs the affirmative obligation to present evidence demonstrating a genuine issue of material fact. *Id.* at 324, 106 S.Ct. at 2553. Moreover, in evaluating whether the plaintiff has fulfilled its burden of production, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986). With these principles in mind, the court turns to the issues presented.

### III.

█ The Supremacy Clause of the United States Constitution states: "This Constitution, and the Laws of the United States which shall be made in Pursuance thereof ... shall be the supreme Law of the Land; ... any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const. art. VI, cl. 2. Pursuant to the Supremacy Clause, federal law may preempt state and local laws in three ways: (1) expressly; (2) by occupying the field so pervasively with federal legislation so as to leave no room for a state or locality to act; or (3) if the state or local law actually conflicts with federal law. *Feikema v. Texaco, Inc.,* 16 F.3d 1408, 1412 (4th Cir.1994). An actual conflict between federal law and state or local law may exist either if compliance with both sovereigns' laws is impossible, or if "the state law stands as an obstacle to the accomplishment of the full purposes and objectives of federal law." *Id.* at 1413 (quoting *Silkwood v. Kerr–McGee Corp.,* 464 U.S. 238, 248, 104 S.Ct. 615, 621, 78 L.Ed.2d 443 (1984)). The parties agree that the only possible method by which the Ordinance could be preempted is if it conflicts with the Act by standing as an obstacle to its full purposes and objectives.

█ To determine whether the Ordinance is preempted, the appropriate starting point is the language of the federal law. The Act states: "The determination of the manner of disposal or use of sludge is a local determination...." 33 U.S.C. § 1345(e). In addition, although not directly dealing with the use or disposal of sewage sludge, the Act expressly permits states and localities to adopt or enforce any standard or limitation with regard to discharges of pollutants, unless such standard or limitation is less stringent than the standards or limitations under the Act. *Id.* § 1370. The plaintiffs make no serious argument that the ordinance conflicts with this statute; rather, they assert that the regulations promulgated pursuant to the Act establish a national policy encouraging the land application of sewage sludge. They first point out that to help "restore and maintain the chemical, physical, and biological integrity of the Nation's waters," the Clean Water Act "provide[s] for the reduction of risks and the maximization of benefits associated with the disposal and use of sewage sludge...." *Id.* § 1251. In its regulations, the EPA states that land application is a means of making "beneficial use" of sewage sludge because "[t]he nutrients and other properties commonly found in sludge make it useful as a fertilizer and a soil conditioner." 58 Fed. Reg. 9249. To promote land application, the EPA suggests that:

> Communities should consider alternatives other than burying or burning their sludge. These are wasteful practices that pose risks and incur costs. Some methods of sewage sludge disposal, such as incineration and uncovered landfills, may contribute to global warning (i.e., the "greenhouse effect") by releasing carbon dioxide and methane.

*Id.* Furthermore, the EPA's review of scientific and technical literature concerning sewage sludge shows that land application poses less carcinogenic risk than other disposal practices. *Id.* at 9258. In general, the regulations contain detailed discussion of the costs and benefits of each method of use or disposal, and they conclude that land application is the preferred method. Despite this conclusion, the regulations also make clear that land application of sewage sludge still carries with it some health risks; it is, after all, a pollutant.

Notwithstanding any regulatory preference for land application, the EPA's final rules leave the ultimate determination to states and localities. Tracking Congress's

mandate in the Act, the rules state: "Nothing in this part precludes a State or political subdivision thereof ... from imposing requirements for the use or disposal of sewage sludge more stringent than the requirements in this part or from imposing additional requirements for the use or disposal of sewage sludge." 40 C.F.R. § 503.5(b) (1994). The plaintiffs assert, however, that more stringent requirements only may be imposed on a case-by-case basis, and only after "the permitting authority (i.e., either EPA or a State with an EPA-approved sludge management program) [ ]determine[s] that the more stringent standards or additional requirements are needed to protect public health and the environment from any adverse effect of a pollutant in the sewage sludge." 58 Fed. Reg. 9324. From this language, the plaintiffs contend that more stringent standards only may be imposed case-by-case and after specific findings directed to a particular site, and a county-wide ban on land application is too broad to survive. The plaintiffs' argument, however, confuses two subsections of the same regulation. The discussion containing the above-cited language that the plaintiffs quote from the Federal Register goes on to refer expressly to § 503.5(a), which states:

> On a case-by-case basis, the permitting authority may impose requirements for the use or disposal of sewage sludge in addition to or more stringent than the requirements in this part when necessary to protect public health and the environment from any adverse effect of a pollutant in the sewage sludge.

40 C.F.R. § 503.5(a). The "case-by-case basis" language, however, is inapplicable to § 503.5(b), quoted above. This is clear because the very next paragraph in the Federal Register states:

> As provided in section 510 of the [Clean Water Act], as amended, States or political subdivisions thereof ... *also* may impose more stringent standards for the use or disposal of sewage sludge than the standards in today's final rule. A State or a political subdivision thereof ... *also* may establish additional requirements for the use or disposal of sewage sludge as authorized by State law.

58 Fed.Reg. 9329 (emphasis added). The regulations clearly distinguish between more stringent generally applicable laws enacted by states and more stringent exceptions when required in a particular case.

The plaintiffs cite *ENSCO, Inc. v. Dumas,* 807 F.2d 743 (8th Cir.1986), in support of their position. In that case, the Eighth Circuit found that a county ordinance which banned the storage, treatment, or disposal of certain "acute hazardous waste" within the county's boundaries was preempted by a Resource Conservation and Recovery Act (RCRA) provision which requires that hazardous waste be treated, stored, and disposed of in a manner which minimizes the threat to humans and the environment. *See* 42 U.S.C. § 6902(b) (Supp. III 1985). As in this case, RCRA also contains a "savings clause" which states that "[n]othing in this chapter shall be construed to prohibit any State or political subdivision thereof from imposing any requirements ... which are more stringent than those imposed by [federal] regulations." *Id.* § 6929. Despite this savings clause, the court found a conflict between RCRA's objective of encouraging the safe disposal and treatment of hazardous waste and the county ordinance. *ENSCO,* 807 F.2d at 745. Unlike this case, however, *ENSCO* concerned a situation in which a county passed an outright ban on the treatment and disposal of a substance that federal law affirmatively instructed it to treat and dispose of safely. Here, the County has not passed a complete ban on sewage sludge within its boundaries; it simply has banned one of three possible methods of use or disposal. Regardless of the EPA's preference for land application, the Ordinance does not conflict with the federal standards for use or disposal of sewage sludge.

Furthermore, the plaintiffs go too far when they assert that one of the purposes of the Clean Water Act is to promote the land application of sewage sludge. Admittedly, the safe use or disposal of sewage sludge is such a purpose, but the EPA has established several methods of use or disposal which it deems to be safe, notwithstanding its preference for land application. In the EPA's opinion, land application may have

certain benefits that other methods do not and it may want to encourage land application as the method of choice, but without clearer statutory language, a mere preference is vastly different from legislation forcing states and localities to permit land application. This is especially true when no such preference for land application appears in the statute itself.[3] Although agency regulations may preempt local laws, *Hillsborough County v. Automated Medical Labs., Inc.*, 471 U.S. 707, 713, 105 S.Ct. 2371, 2375, 85 L.Ed.2d 714 (1985), in such a case the challenged law presumptively is not preempted. *Id.* at 715, 105 S.Ct. at 2376. Regulations generally do not preempt state and local laws absent an express statement by the agency that it intends to do so. *Id.* at 718, 105 S.Ct. at 2377. Such an express intention cannot be found in the EPA's regulations. Particularly considering the savings clauses found in both the Act, 33 U.S.C. § 1345(e), and the EPA's regulations, 40 C.F.R. § 503.5(b), the EPA's preference for land application of sewage sludge is insufficient to preempt the Ordinance.

## IV.

Although the Commerce Clause merely states that Congress shall have the power to regulate commerce among the states, U.S. Const. art. I, § 8, cl. 3, it has been interpreted to prevent the states from unjustifiably burdening the free flow of interstate commerce. *See Oregon Waste Sys., Inc. v. Department of Envtl. Quality*, — U.S. —, —, 114 S.Ct. 1345, 1349, 128 L.Ed.2d 13 (1992). The parties agree that the Ordinance does not discriminate facially against interstate commerce; thus, it must be reviewed pursuant to the test set forth in *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 90 S.Ct. 844, 25 L.Ed.2d 174 (1970).

Where the statute regulates evenhandedly to affect a legitimate local public interest, and its effects on interstate commerce are only incidental, it will be upheld unless the burden imposed on such commerce is clearly excessive in relation to the putative local benefits.... If a legitimate local purpose is found, then the question becomes one of degree. And the extent of the burden that will be tolerated will of course depend on the nature of the local interests involved, and on whether it could be promoted as well with a lesser impact on interstate commerce.

*Id.* at 142, 90 S.Ct. at 847 (citations omitted). Applying the *Pike* test, the magistrate judge found that the County's concerns are not illusory and that the plaintiffs had failed to submit evidence demonstrating a burden on interstate commerce. As a result, he granted the County's motion for summary judgment.

■ As an initial issue, the County asserts that because the Ordinance is designed to promote health and safety, rather than economic concerns, the court need not even balance its benefits against its burden on interstate commerce before upholding it. To support this proposition, the County primarily relies upon *Kassel v. Consolidated Freightways Corp.*, 450 U.S. 662, 101 S.Ct. 1309, 67 L.Ed.2d 580 (1981), in which the Supreme Court stated that if a locality's safety concerns are not "illusory" then federal courts "will not second-guess legislative judgment about their importance in comparison with related burdens on interstate commerce." *Id.* at 670, 101 S.Ct. at 1316. *Kassel* goes on to caution, however, that "the incantation of a purpose to promote the public health or safety does not insulate a state law from Commerce Clause attack. Regulations designed for that salutary purpose nevertheless may further the purpose so marginally, and interfere with commerce so substantially, as to be invalid under the Commerce Clause." *Id.* As a result, although balancing the local benefits against the burden on interstate commerce is, in fact, required for a safety ordinance, if a local safety ordinance is legitimate then the challenger must demonstrate a very

---

**3.** Another difference between this case and *ENSCO*, 807 F.2d 743, is that RCRA explicitly states that one of its objectives is "minimizing the generation of hazardous waste and the land disposal of hazardous waste by encouraging process substitution, materials recovery, properly conducted recycling and reuse, and treatment." 42 U.S.C. § 6902(a)(6) (Supp.1995). The Clean Water Act, by contrast contains no preference for land application of sewage sludge over other methods of use or disposal; one must consult the EPA's regulations to find such a preference.

substantial burden on interstate commerce to succeed.

■ The County has articulated five areas of concern against which the ordinance is designed to protect: (1) risk to the environment; (2) risk to human and animal health; (3) risk of the loss of confidence of agricultural products from the County; (4) risk of reduced property values; and (5) risk of an adverse effect on tourism. The plaintiffs' attempt to demonstrate that each of these concerns is illusory, relying primarily upon the affidavit of Dr. Gregory K. Evanylo, Chairman of the Virginia Interagency Committee on the Land Application of Sewage Sludge. The County responds that there is a legitimate scientific debate about the safety of the land application of sewage sludge, even when applied in accordance with EPA regulations. To support its position, the County submitted to the magistrate judge documents discussing the risks of land application of sewage sludge and presented evidence of expert testimony that it received during public hearings concerning the adoption of the relevant amendments to the Ordinance. Based upon this evidence in the record, this court cannot find that the benefits to the County of the ban are illusory. Although the risks of the land application of sewage sludge may be disputed in the scientific community, there clearly is at least a rational basis for believing that the Ordinance will protect the health and safety of those within the County. Given the County's rational belief that the land application of sewage sludge poses health and safety risks, it is beyond question that a complete ban furthers the purpose of protecting against those risks.

■ After finding that a legitimate local interest is furthered by the ordinance, that interest must be balanced against the Ordinance's burden on interstate commerce. The magistrate judge found that the plaintiffs had failed to present any evidence demonstrating a burden on the free flow of sewage sludge in interstate commerce. Instead, the only burden that they asserted was that they could not use sewage sludge as a fertilizer on their land. The plaintiffs maintain that such evidence is sufficient to survive summary judgment. In *Exxon Corp. v. Governor of*

*Maryland,* 437 U.S. 117, 98 S.Ct. 2207, 57 L.Ed.2d 91 (1978), the Supreme Court stated that the Commerce Clause "protects the interstate market, not particular interstate firms," and thus it does not "protect[ ] the particular structure or methods of operation in a retail market." *Id.* at 127, 98 S.Ct. at 2214. In so holding, the court rejected the contention that a state law may violate the Commerce Clause "regardless of whether the state has interfered with the movement of goods in interstate commerce" if it interferes "with the natural functioning of the interstate market either through prohibition or through burdensome regulation." *Id.* (quoting *Hughes v. Alexandria Scrap Corp.,* 426 U.S. 794, 806, 96 S.Ct. 2488, 2496, 49 L.Ed.2d 220 (1976)). To assert a violation of the Commerce Clause, therefore, one must show that a state law in some way impedes the free flow of a good or service in the interstate market, not that the commercial interests of a particular person or group are negatively impacted by it.

In this case, the plaintiffs have failed to make such a showing. It is important to note that the Ordinance does not ban sewage sludge in the County. It merely bans land application as a possible method of its use or disposal. Sewage sludge still may flow freely into and out of the County. Anyone may bring sewage sludge into the County or keep in the County sewage sludge that is generated in the County, provided that they do not apply it to land in the County. They may dispose of it in a landfill, or they may incinerate it. It is possible that some evidence exists somewhere which shows a greater burden on the free flow of sewage sludge because of the Ordinance. The important point is that the plaintiffs have failed to present any evidence suggesting such a burden. They continue to assert that it is sufficient to show that the Ordinance precludes them from applying sewage sludge to their land, and that such application would provide them with substantial benefits. The simple denial of a commercial benefit, however, does not necessarily rise to the level of a Commerce Clause violation. "[T]here is a residuum of power in the state to make laws governing matters of local concern which nevertheless

**760**

in some measure affect interstate commerce or even, to some extent, regulate it." *Kassel,* 450 U.S. at 669, 101 S.Ct. at 1315 (quoting *Southern Pacific Co. v. Arizona,* 325 U.S. 761, 767, 65 S.Ct. 1515, 1519, 89 L.Ed. 1915 (1945)). Absent any other evidence, the plaintiffs simply have failed to demonstrate a meaningful burden on the free flow of interstate commerce.

After finding a legitimate local purpose for the Ordinance, the question of the burden of interstate commerce "becomes one of degree." *Pike,* 397 U.S. at 142, 90 S.Ct. at 847. "It may be said with confidence, however, that a State's power to regulate commerce is never greater than in matters traditionally of local concern." *Kassel,* 450 U.S. at 670, 101 S.Ct. at 1316. Given the County's strong local interest in promoting health and safety, to succeed in its Commerce Clause challenge the plaintiffs must overcome a "strong presumption of validity." *Id.* (quoting *Bibb v. Navajo Freight Lines, Inc.,* 359 U.S. 520, 524, 79 S.Ct. 962, 965, 3 L.Ed.2d 1003 (1959)). That strong presumption of validity has not been overcome by the plaintiff's insufficient evidence of the burden on the plaintiff's personal commercial interests. Even if the impact that they have shown can be characterized as a burden on interstate commerce, it is de minimis at best and insufficient as a matter of law to satisfy the *Pike* balancing test. Because of the nature of the local interests involved and the slight, if any, extent of the burden on interstate commerce, no lesser restrictive alternative need be considered by the County. The ordinance does not violate the Commerce Clause.

### V.

The Ordinance is not preempted by the Clean Water Act because the Act allows states and localities to enact requirements for the use or disposal of sewage sludge more stringent than the federal requirements. Any preference for land application over other methods is not enough to preempt the prerogative of states and localities to regulate in this area. Furthermore, the Ordinance does not violate the Commerce Clause. The County has demonstrated benefits that are not illusory, and the plaintiffs have failed to come forward with sufficient evidence that the burden on the free flow of sewage sludge in interstate commerce is clearly excessive in relation to the putative local benefits asserted by the County. The decision of the magistrate judge is affirmed.

### ORDER

For the reasons stated in the accompanying Memorandum Opinion, it is this day

### ADJUDGED AND ORDERED

that the decision of the magistrate judge shall be, and it hereby is, affirmed.

The Clerk of the Court is hereby directed to send a certified copy of this Order and the accompanying Memorandum Opinion to all counsel of record and Magistrate Judge B. Waugh Crigler.